J-S15006-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :   IN THE SUPERIOR COURT OF
                                         :        PENNSYLVANIA
                                         :
          v.                            :
                                         :
                                         :
DERRAN ANDERSON                  :
                                         :
          Appellant              :   No. 1947 EDA 2025

Appeal from the Judgment of Sentence Entered January 9, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000266-2024

BEFORE:    OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                      **FILED JUNE 30, 2026**

Appellant, Derran Anderson, appeals from the judgment of sentence entered on January 9, 2025, following his bench trial convictions for firearms not to be carried without a license, carrying firearms on public streets in Philadelphia, and persons not to possess a firearm.[1] We affirm.

The trial court briefly summarized the facts of this case as follows:

On December 26, 2023, at approximately 7:00 p.m., Philadelphia Police Officer Anthony Ramuno (hereinafter "Officer Ramuno") was on patrol with Police Officer Marc Kusowski (hereinafter "Officer Kusowski") near the 3000 block of North 9th Street in the City of Philadelphia, Pennsylvania. While on patrol, Officer Ramuno observed a vehicle blocking a fire hydrant and crosswalk on the southwest corner of 9th and Indiana Streets. The officers activated [the] lights and siren on their police vehicle and approached the car to investigate the motor vehicle code

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6106(a)(1), 6108, and 6105(a)(1), respectively.

violations.    Upon approach, Officer Ramuno encountered Appellant, who was in the driver's seat, and three other people – a front passenger and two rear passengers.    Officer Ramuno stated the reason for the stop.    There was an interaction between the officer and Appellant.  During that interaction, Officer Ramuno asked for Appellant's identification and [proof of insurance and registration]  for  the  car.    Officer  Ramuno  was  handed identification and a piece of paper of some sort.  [According to Officer Ramuno, Appellant became increasingly nervous during the interaction].  Appellant had a [cellular tele]phone in his hand and was attempting to call his mother.

Officer Ramuno called for backup officers so that a safety frisk for weapons could be conducted.  Eventually, Officer Ramuno asked Appellant to step out of the vehicle, at which time he was frisked for weapons.  While attempting to place Appellant in the back of the police car, Appellant's mother began walking down the street and Appellant tried to flee.  As Appellant was being placed in the police car he yelled to his [mother] to "turn off the car and lock the doors."  A crowd of ten or more people gathered shortly after Appellant attempted to flee.    After the three passengers were removed from the vehicle, Officer Kusowski recovered a firearm under the driver's seat, where Appellant was seated.

Trial Court Opinion, 9/25/2025, at 3-4 (record citations omitted).

The police arrested Appellant and the Commonwealth charged Appellant with the aforementioned crimes.  Relevant to this appeal, Appellant filed a pre-trial motion to suppress, and the trial court held a hearing on the motion on September 6, 2024.   Following the hearing, the trial court denied relief and Appellant proceeded directly to a bench trial wherein he was represented by counsel.  Appellant stipulated that the firearm was operable and that he was not eligible to possess it.  At the conclusion of the bench trial, the trial court found Appellant guilty of all charges.   After the preparation of presentence investigation and mental health reports, the trial court sentenced Appellant to an aggregate term of 11½ to 23 months of incarceration followed

by three years of probation. After the trial court granted an extension, Appellant filed post-sentence motions which were eventually denied by operation of law. On July 28, 2025, the trial court reinstated Appellant's appellate *rights nunc pro tunc*, at his request, and Appellant filed a timely notice of appeal the same day. On August 19, 2025, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) and Appellant complied timely. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on September 25, 2025.

On appeal, Appellant presents the following issues for our review:

I. Whether the trial court erred in denying Appellant's [m]otion to [s]uppress where:

   a. the traffic stop was unlawfully prolonged beyond its original mission of addressing parking violations; and

   b. the officers lacked reasonable suspicion to conduct a protective search of the vehicle, as nervousness and calling one's mother during a traffic stop do not establish articulable facts supporting a belief that Appellant was armed and dangerous?

II. Whether the evidence was insufficient to establish that Appellant constructively possessed the firearm where:

   a. the firearm was found hidden underneath the driver's seat and was not visible without moving the seat;

   b. three other passengers were present in the vehicle; and

   c. the only other evidence linking Appellant to the firearm was his alleged nervousness and that he was the driver and registered owner of the vehicle.

Appellant's Brief at 4.

In his first issue presented, Appellant argues that "[t]he trial court erred in denying Appellant's [m]otion to [s]uppress because the officers lacked reasonable suspicion to expand a routine parking violation stop into a full-scale search of the vehicle." *Id.* at 9. Appellant maintains that his "alleged nervousness and his attempt to call his mother" were "innocuous behaviors [that] do not constitute articulable facts suggesting criminal activity" required for the police to establish reasonable suspicion. *Id.* Further, Appellant suggests that the trial court also impermissibly relied upon officer observations of "furtive movements," more specifically, "reaching for a cell phone and registration documents" because such actions "were entirely consistent with innocent behavior during a routine traffic stop." *Id.* at 10. Appellant further contends that exigent circumstances and his presence in a "high crime area" did not justify a warrantless search of the vehicle when "[t]he officers could have secured the scene and obtained a warrant." *Id.* Appellant claims that the police decided to search the vehicle before a crowd amassed, including Appellant's mother, and that all occupants had been removed from the car, no one tried to enter the vehicle, and there was no evidence of attempted evidence destruction. *Id.* at 17. Accordingly, Appellant argues that his constitutional rights were violated and "the firearm and all evidence derived therefrom should have been suppressed." *Id.*

Our appellate standard of review of the denial of a motion to suppress:

is limited to determining whether the findings of fact are supported by the record and whether the legal conclusions drawn from those facts are in error. In making this determination, this

- 4 -

Court may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted. If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous.

Further, our review is limited to the suppression hearing record. With respect to a suppression court's factual findings, it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented....

\* \* \*

At a suppression hearing, the Commonwealth has the burden of establishing by a preponderance of the evidence that the evidence was properly obtained. The preponderance of the evidence is the lowest burden of proof in the administration of justice, and it is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly in one's favor.

***Commonwealth v. Easter***, 331 A.3d 675, 679–680 (Pa. Super. 2025) (internal case citations and quotations omitted), *appeal denied*, 345 A.3d 1199 (Pa. 2025).

Appellant essentially concedes the police engaged in a routine and lawful traffic stop supported by probable cause. ***See*** Appellant's Brief at 14 ("[O]fficer stopped Appellant for two parking violations" and "[t]he officers were entitled to ask for Appellant's license and registration, run his information, and issue a citation."). He claims, however, that his nervousness and calling his mother were innocuous, that his furtive movements (reaching for his cellular telephone and registration documentation) were innocent, that there were no exigencies or escape attempts by the other vehicle occupants, and that the high crime nature of his surroundings did not justify a warrantless

search. Given Appellant's claims, we shall examine the validity of the initial vehicle stop, the removal of Appellant as the driver of the vehicle in question, and the validity of the limited search of the passenger compartment.

Here, the police observed Appellant's vehicle blocking a fire hydrant and crosswalk. "Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense." *Commonwealth v. Marberger*, 344 A.3d 403, 415 n.9 (Pa. Super. 2025) (citation omitted). In this case, as Appellant acknowledges, the police had probable cause to initiate a traffic stop based upon their observation of the vehicle blocking a fire hydrant and crosswalk.

In turning to Appellant's argument that the stop was prolonged beyond its original purpose, the record belies this contention. In *Rodriguez v. U.S.*, 575 U.S. 348 (2015), the High Court held that, although a traffic stop cannot be prolonged so as to allow for an investigation into unrelated criminal conduct absent reasonable suspicion, the police may check the driver's license, determine if the driver has any outstanding warrants and inspect the vehicle's registration and proof of insurance. *Id.* at 355. Nothing in this record indicates that the police extended the interaction beyond what was necessary to fulfill the traffic stop's mission in a reasonably safe manner. As Officer Ramuno testified, standard procedure for a motor vehicle code violation is to obtain the driver's license, return to the patrol vehicle, and run the driver's name and information through the computer. N.T. (Suppression Hearing),

9/5/2024, at 27. The officers followed this procedure in a timely manner and did not prolong the traffic stop in order to achieve its original purpose.

Next, we shall assess the validity of Appellant's removal from the vehicle.

> It is well-settled that, during a traffic stop, the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." **Berkemer v. McCarty**, 468 U.S. 420, 439 (1984). **See Commonwealth v. Harris**, 176 A.3d 1009 (Pa .Super. 2017). Moreover, during "a lawful traffic stop, the officer may order [ ] the driver...of a vehicle to exit the vehicle until the traffic stop is completed, even absent a reasonable suspicion that criminal activity is afoot." **Commonwealth v. Pratt**, 930 A.2d 561, 564 (Pa. Super. 2007). **See Commonwealth v. Dunham**, 203 A.3d 272 (Pa. Super. 2019) (noting a police officer conducting a lawful traffic stop may order the driver to get out of the car); **Commonwealth v. Campbell**, 862 A.2d 659 (Pa. Super. 2004) (holding that during a routine traffic stop the police may request the driver exit the vehicle as a matter of course). We have recognized that "'when an officer detains a vehicle for violation of a traffic law, it is inherently reasonable that he or she be concerned with safety and, as a result, may order the occupants of the vehicle to alight from the car.'" **Harris**, 176 A.3d at 1009 (quoting **Commonwealth v. Rosas**, 875 A.2d 341, 348 (Pa. Super. 2005)). "[A]llowing police officers to control all movement in a traffic encounter...is a reasonable and justifiable step towards protecting their safety." **Pratt**, 930 A.2d at 567-568.

**Commonwealth v. Wright**, 224 A.3d 1104, 1109 (Pa. Super. 2019). Because the police had the authority to remove Appellant as a matter of course during a valid stop, there is no merit to a challenge of this stage of the interaction.

We now turn to the validity of the search of Appellant's vehicle. Our Supreme Court has previously determined that protective searches extend to the interior of an automobile:

> The search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. The issue is whether a reasonably prudent man would be warranted in the belief that his safety or that of others was in danger.

*Commonwealth v. Morris*, 644 A.2d 721, 723 (Pa. 1994), *citing* *Michigan v. Long*, 463 U.S. 1032, 1049–1050 (1983) (internal citations, quotations, and brackets omitted).

As the United States Supreme Court articulated in *Long*, protective automobile searches are permissible because

> despite being under the brief control of a police officer, [a] suspect [may] break away from police control and retrieve a weapon from his automobile. In addition, if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside. Or, [] the suspect may be permitted to reenter the vehicle before the [] investigation is over, and again, may have access to weapons. In any event, [when] a police investigation [occurs] at close range, [] the officer remains particularly vulnerable in part because a full custodial arrest has not been effected, and the officer must make a quick decision as to how to protect himself and others from possible danger[.] In such circumstances, [the United States Supreme Court has] not required that officers adopt alternative means to ensure their safety in order to avoid [constitutional] intrusion[.]

*Long*, 463 U.S. at 1051-1052 (cleaned up).

Limited passenger compartment searches are thus permitted where the police can articulate a reasonable belief that the suspect is dangerous and may gain immediate control of a weapon. We have said that furtive movements within the context of a nighttime stop in a high crime area can establish reasonable suspicion to conduct a limited vehicle search for weapons. For example:

In ***Commonwealth v. Rosa***, 734 A.2d 412 (Pa. Super. 1999), a Philadelphia police officer stopped a vehicle containing three adult males. When the officer pulled the vehicle over, he observed one of the men "looking back, and moving around, moving forward, and looking back—just moving around a lot." After approaching the vehicle, he observed, in plain view, two knives, and several crossbow arrows. The officer directed the men to step out of the car, and discovered two handguns under the backseat of the vehicle.

This Court held that the officer was justified in his search, because (1) the traffic stop occurred late at night; (2) the driver could not produce his driver's license, vehicle registration, and proof of insurance; (3) the vehicle's occupants possessed three knives and several crossbow arrows; and (4) the man in the back seat was "extremely active ... as the officer approached the vehicle."

Similarly, we have held that a defendant's "furtive movement of leaning forward and appearing to conceal something under his seat, along with his extreme nervousness and a night time stop, was sufficient to warrant a reasonable police officer to believe that his safety was in danger and that the defendant might gain immediate control of a weapon." [***Commonwealth v.***] ***Buchert***, 68 A.3d [911, at] 916-917 [(Pa. Super. 2013)]; ***see also Commonwealth v. Simmons***, 17 A.3d 399, 401 (Pa. Super. 2011) (finding reasonable suspicion where the traffic stop was conducted at night, in a high-drug and high-crime area, and the officer witnessed the defendant make the furtive movement of reaching under his seat and then towards his chest, consistent with concealing a weapon); ***In re O.J.***, 958 A.2d 561, 566 (Pa. Super. 2008) (finding reasonable suspicion where the traffic stop occurred at night, the defendant initially failed to stop his vehicle

when signaled by police, and the defendant made "rapid and furtive hand movements over the vehicle's console," which had been left partially opened); *Commonwealth v. Murray*, 936 A.2d 76, 80 (Pa. Super. 2007) (finding reasonable suspicion where the traffic stop occurred at night and in a high-narcotics area, the defendant's vehicle had tinted windows, and the defendant made "a lot of movement in the vehicle" as the officer was approaching).

In contrast, this Court in *Commonwealth v. Cartagena*, 63 A.3d 294 (Pa. Super. 2013), found that an officer lacked reasonable suspicion to conduct a warrantless search of a vehicle where (1) the stop occurred at night, (2) the defendant's vehicle had tinted windows, and (3) the defendant appeared "extremely nervous." The *Cartagena* court noted that there was no testimony indicating that the defendant had made furtive movements, that the stop occurred in a high-crime area, or that the police saw any weapons in the vehicle prior to conducting the search. *Id.* at 304-306; *see also Commonwealth v. Moyer*, 954 A.2d 659, 669-670 (Pa. Super. 2008) (holding that evidence that a vehicle's occupants engaged in furtive movements and appeared nervous was insufficient to establish reasonable suspicion); *Commonwealth v. Reppert*, 814 A.2d 1196, 1206 (Pa. Super. 2002) (same).

*Commonwealth v. Arrington*, 233 A.3d 910, 916–917 (Pa. Super. 2020) (footnotes, original brackets, and most quotations omitted).

Additionally, in *Commonwealth v. Muhammad*, 289 A.3d 1078, 1089 (Pa. Super. 2023) this Court held that a protective search of a vehicle was constitutional where the officer specifically testified that Muhammad's behavior made him "feel as if there was something that could be dangerous." *Muhammad*, 289 A.3d at 1089. The officer "was not wearing a bullet proof vest or carrying a taser," and his conversation with Muhammad "'absolutely' signaled to him based on his training and experience that [Muhammad] was potentially armed and dangerous." *Id.* Finally, "[t]he search of the car was

restricted to those areas that [Muhammad] would have immediate control of and could contain a weapon." *Id.*

Here, the trial court determined that "after handing over his documentation, Appellant continued to move around inside the vehicle and was ordered to stop" and "became increasingly nervous, shaky, and was calling individuals to the scene [on his cellular telephone] during the[] interaction" with the police. Trial Court Opinion, 9/25/2025, at 6, *citing* N.T. (Suppression Hearing), 9/5/2024, at 6 and 16. More specifically, Officer Ramuno testified that he was concerned that others would come to the location when the police were "already outmanned." N.T. (Suppression Hearing), 9/5/2024, at 14. As Officer Ramuno was walking Appellant to the police cruiser, he testified as follows:

> I hear [Appellant's] mom, she's coming on location, maybe a block away, and she is yelling. [Appellant] attempts to break free from me and flee. I'm holding on to him, trying to get him in the [police] vehicle, struggling to get him in the vehicle. Mom is coming and yelling at this point, so now it's becoming chaotic. It takes myself and another officer to try to get [Appellant] into the vehicle. As I finally get him placed in the vehicle, he yells to mom, turn[] off the car and lock[] the doors. At this point, I'm very concerned that he is trying to hide evidence or something, which, in my mind, I believe is a firearm [that] he would have been able to use [] against me.

*Id.* at 19-20. Moreover, the trial court further noted that the scene was chaotic as "[a] crowd of ten or more people gathered shortly after Appellant attempted to flee." Trial Court Opinion, 9/25/2025, at 6, *citing* N.T. (Suppression Hearing), 9/5/2024, at 23-24 (Officer Ramuno testified, "I'm

- 11 -

concerned that we are either going to get jumped or we are going to get attacked or they are just trying to distract us away from that vehicle, where there may be a firearm, and they could, maybe, go retrieve evidence. … I've been in situations where crowds form and throw things at officers or fight[.]"). Further, the trial court recognized that the traffic stop occurred at night and in high-crime area known to the officers for gun violence and 24-hour police surveillance. Trial Court Opinion, 9/25/2025, at 6, *citing* N.T. (Suppression Hearing), 9/5/2024, at 79. Finally, as discussed in detail with regard to Appellant's second issue below, Appellant had occupied the driver's seat, where the firearm was eventually recovered. As such, the search conducted by the police was limited to the areas where Appellant (or other unsecured vehicle occupants) could reach. Viewing the evidence in the light most favorable to the Commonwealth, we conclude that the police articulated reasonable grounds to believe that their safety (or that of others) was in danger. Therefore, the police had reasonable suspicion to conduct a limited search of Appellant's vehicle for weapons. Accordingly, for all of the foregoing reasons, we conclude that the trial court did not abuse its discretion or err in denying suppression. As such, there is no merit to Appellant's first issue.

Next, Appellant argues that the evidence presented at trial was insufficient to establish that he was in constructive possession of the firearm at issue. Appellant's Brief at 18-21. Appellant argues that the Commonwealth relied entirely upon the fact that Appellant was the owner and driver of the vehicle in question, Appellant appeared nervous, and the firearm was found

under the driver's seat. *Id.* at 10-11. Appellant argues that there was no evidence that he made any movements near the hidden firearm. *Id.* at 20. He suggests he did not know the firearm was under his seat because the "firearm was not in plain view" and "[t]he Commonwealth presented no evidence establishing that Appellant – as opposed to one of his [three] passengers – was responsible for the firearm's presence." *Id.* at 19-20.

This Court has stated:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Mumford*, 353 A.3d 247, 256 (Pa. Super. 2026) (internal citation omitted). In this case, there is no dispute that Appellant was convicted of three possessory crimes.

- 13 -

To establish possession, we recently reiterated in **Mumford**:

This Court has held that "possession can be found by proving actual possession, constructive possession, or joint constructive possession." **Commonwealth v. Heidler**, 741 A.2d 213, 215 (Pa. Super. 1999)(*en banc*).   Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction.   **Commonwealth v. Hopkins**, 67 A.3d 817, 820 (Pa. Super. 2013) (conviction under 18 Pa.C.S.A. § 6106(a) supported by a finding of constructive possession); **see also Commonwealth v. Parker**, 847 A.2d 745 (Pa. Super. 2004) (same).   "Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." **Hopkins**, **supra** at 820 (citation and quotation omitted).   "We have defined constructive possession as conscious dominion," meaning that the defendant has "the power to control the contraband and the intent to exercise that control."   **Id.** (citation and quotation omitted).

"To aid application, we have held that constructive possession may be established by the totality of the circumstances." **Id.** (citation and quotation omitted).

It is well established that, "as with any other element of a crime, constructive possession may be proven by circumstantial evidence." **Commonwealth v. Haskins**, 677 A.2d 328, 330 (Pa. Super. 1996) (citation omitted).   In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.   **Commonwealth v. Parrish**, 191 A.3d 31, 36-37 (Pa. Super. 2018), *appeal denied*, 202 A.3d 42 (Pa. 2019).

"To find constructive possession, the power and intent to control the contraband does not need to be exclusive to the defendant ... and may be found in one or more actors where the item in issue is in an area of joint control and equal access." **Commonwealth v. Rojas-Rolon**, 256 A.3d 432, 437-438 (Pa. Super. 2021), *appeal denied*, 285 A.3d 879 (Pa. 2022); **see also Commonwealth v. Johnson**, 26 A.3d 1078, 1094 (Pa. 2011) (explaining that constructive possession of item may be found in one or more individuals if they are occupants of same vehicle and item is located is area of joint control and equal access); **Haskins**,

- 14 -

> *supra* at 330 (stating: "The fact that another person may also have control and access does not eliminate the defendant's constructive possession; two actors may have joint control and equal access and thus both may constructively possess the contraband").

*Id.* at 257–258 (brackets omitted).

Here, the trial court determined that "there [was] ample evidence that Appellant constructively possessed a concealed firearm." Trial Court Opinion, 9/25/2025, at 7. More specifically, the trial court found that "Appellant's actions after the vehicle was stopped, combined with the testimony of Officer Ramuno and Officer Kusowski, the orientation of the weapon when it was recovered, and [] Appellant's proximity to the area where the weapon was recovered provided the basis for [the] court's determination that [Appellant] possessed the firearm." *Id.* at 8. Appellant was the owner and driver of the vehicle. Police recovered the firearm from under the driver's seat, where Appellant was sitting, and the barrel of the gun was pointing to the rear of the car, circumstantially suggesting that Appellant placed it there. *Id.* Moreover, as the trial court noted, after the police ordered Appellant out of the vehicle, Appellant attempted to flee and asked his mother to secure the vehicle, suggesting he knew the illegal firearm was inside the car and that he intended to secure and conceal it. *Id.* Finally, it is immaterial that one of the other passengers had the power and intent to control the firearm because that would not defeat Appellant's constructive possession. Certainly, more than one actor may have joint control and equal access and thus both may constructively possess the contraband. *See Mumford*, **supra**. As such, we agree with the

trial court's assessment that Appellant constructively possessed the concealed firearm. Accordingly, Appellant's second issue does not warrant relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/30/2026